Good morning again. May it please the Court, Jehan Thomas. I represent the petitioner, Mrs. Malik, and I reserve two minutes of rebuttal time. Well, we didn't help you last time with that, but we'll try to do that. Okay. Mrs. Malik asked this Court to find that the fraud inflicted on her by the immigration consultant constituted extraordinary circumstances waiving the one-year deadline, and she was not required to comply with the Lozada requirement under this Court precedent in very John F. Holder. Now, Mrs. Malik also asked this Court to find that she has filed her application within reasonable time given those circumstances. Now, the regulation in this Court precedent in Hasso v. Mukassi have held that the preemable six-month period is not a hard cutoff, but it's a presumptive deadline that would apply in the absence of any special circumstances. In Wakari, this Court accepted seven months to gather document. In Taslimi, this Court accepted seven months in order to be able to know whether her Christian faith is the real genuine faith or not. The facts in this case is a little bit different. Mrs. Malik retained an immigration consultant within eight months of her entry. She paid him $2,000 from her hard-earned money after she lost all her business and her belongings in Indonesia. She discovered the fraud after the statutory period had lapsed in July 2003. And she was never advised with the one-year statutory deadline. I'd like to get into a little bit more into this whole factual finding, whether it was permissible by the BIA, and hoping maybe you can help me sort through this labor group analysis that's required. Okay. I believe here the board made erroneous factual finding and additional factual finding. And the erroneous factual finding, that was not even in the record. They claimed that petitioner's sister was raped during the rise. That was not even in the record at all. They also made an erroneous factual finding that respond to the petitioner's business was partially destroyed. That's not within the record. It said that her entire business was destroyed. Her delivery truck was destroyed. Even her home was destroyed. So it wasn't a partial destruction. They also made an erroneous factual finding that she only received threatening notes. They completely ignored that she has confronted her attackers. They displayed the knife on her, that she suffered a minor injury, and she escaped. And completely receiving threatening notes from having a confrontation with your attackers is completely different factual findings here. And they based these erroneous factual findings to engage in another impermissible fact finding in determining this labor group analysis. So I believe not only that they made additional, but they also relied on an erroneous factual finding to engage. I have a question. Were they allowed to do so because this is somehow a question of law that they're trying to determine? Or is it purely a factual question? No. We believe that this is in accordance with this court, Redor and Third Circuit Kaplan, that this is an impermissible fact finding. In order to engage and determine whether she is entitled to a withholding, they had to go and determine what happened to her in the past, which they relied on erroneous factual finding. They also had to determine what would happen to her in the future, a future fact finding this court and the Third Circuit and Kaplan have indicated that would be a factual finding. The only thing that the board was entitled to know is, depending on everything else, what happened to her, would that entitle her to withhold? That was the only legal question available for the board. And they did not do that because they engaged, like I said, in both impermissible factual finding and erroneous factual finding to determine this labor group analysis. So according to Seal, I think, if I'm reading it right, you know, disfavored group analysis requires two findings. And they describe it as operating in tandem. Yes. The petitioner, that the petitioner is a member of a disfavored group and that the petitioner is at some level of individualized risk. And my question is, are those distinct from the regulatory requirements set forth under 8 CFR 20816B2 that petitioners establish that they will be singled out individually or that there is a pattern or practice of persecution? I believe maybe the standard in the Seal lowers the standard because the more harm to the group, the less individualized they have to show. So what technically petitioner must show is some individualized, that she was not specifically singled out, she just suffered some individualized risk as a member of a disfavored group. But in this case, Your Honor, it wasn't just that. She was singled out. She was they were looking for her. They displayed her photographs all over the neighborhood. The police was out to look for her. My question is much more basic. Are the singled out individually and pattern or practice of termination questions of fact? Are the findings required under disfavored group analysis findings of fact or is it a question of law? It is a finding of fact because in order to determine whether that person has engaged or that person met the standard of an individualized risk, we have to look at first what happened to them in the past. What would happen to them in the future? How are their threats different from other similar situated Chinese Christian in Indonesia? So these are three factual findings that is not within the purview of the board. Well, talk to me about the matter of V.K. and what does that tell us about the distinction between findings of fact and legal? I believe matter of V.K. has been overruled by the Third Circuit in Kaplan, but the board said it has the authority. Which circuit? Third Circuit in Kaplan. And I believe. No, we don't care what they did. Yeah. It was something we did. I believe what the board said in this case that they have the right to review a legal question. They know when they have the discretion to do so. But if we break the analysis into how they can reach that legal question, they must engage in factual finding. For example, like I said, to determine what would happen to a person or withholding claim, they have to determine exactly what happened to them in the past. So they have to look at the facts of what happened. In this case, they didn't even rely on what happened because all their factual findings were erroneous and not supported by the record. So this is number one. So what you're saying to me, I guess, is that if they hadn't, and I know your allegation is that they did, if they didn't involve themselves in impermissible fact-finding, and even if they didn't use erroneous fact-finding, still just the application of the law to the facts the I.J. had in front of them is nonetheless something that ought to be returned to the I.J.? That is correct, Your Honor. Just the mere application of the law? The application of the law. Because I'm having a tough time really making that stick with what I read to you in Vidig, which is our recent decision in 2013, which says, the BIA has interpreted questions of law to include not only pure questions of law, but also to include the application of a particular standard of law to a set of facts. In other words, the facts are in the record. The I.J. has found the facts, and the mere application of the standard of the law to the set of facts, the BIA can do. Now that's our circumstance. That's correct. That's exactly what happened. We had the facts by the I.J. That's what happened in matter of ASB, and that's what happened in matter of V.K., and we're saying they're okay. Okay. So I'm suggesting to you that your idea that if the facts are in the record, and there's no changing of those facts or erroneous finding about them, that the BIA has plenty of authority to decide the issue of just applying the law to the facts. Well, Your Honor, there is a distinction. So tell me why not. Okay. There is a distinction. For example, in Fairfax, what happened is they determined based on the factual finding whether it met the legal standard for particular serious crime. But when we come to engage in an individualized analysis or a withholding, that requires a future fact. This is a withholding. That's a withholding. This is a past persecution and a well-founded fear of future persecution. So it requires a future element to know what would happen. That's exactly what we've got in this case. Yeah, that's what I'm saying, Your Honor. So that future element determines a fact-finding. It will have to determine what would happen to her in the future. It's exactly what the circuit has said. It said, what is torture? The definition of torture would determine two questions. To determine what would happen to him in the future, it's a fact-finding by the board, and whether the facts establish that it is torture. That's the legal question. So our argument here is the factual finding determines what would happen to my client. In the future, that's a future finding, and it's impermissible by the board. And I think I'm almost running out of time. Are the facts in this case, are there facts here that the BIA could have drawn to make this determination of individualization? They could, but they still have to engage in future finding, in fact finding because of the future element in this case. But I understood your argument is even if there were, they didn't, they added facts. They added facts. And they didn't, they didn't draw more facts than not only that, but they didn't talk about the facts they had well in front of them. And made erroneous factual finding, Your Honor. Thank you so much. You see where we are. You see our problems, Mr. Government. Tell us what to do. Yes, Your Honor. I don't think I have the authority to tell you what to do. All right. I'll do my best. Give us a good chance. Give us a good chance. Tell us why, what we, I mean, I think Judge McGee and I have laid it out. That's the question we have. And it seems to me that the BIA is the, if you will, that entity that we're trying to determine. If this were a district court, I don't think we'd have any trouble. Juries, they make fact findings by applying the law to the facts. And we would not be undoing them unless there was clearly no problem on the facts. But that isn't this. This is the BIA. Right, Your Honor. And the court has in other circumstances found that applying the law to the facts is a question of law, like in the Ramadan case, which we really haven't gotten into. Right. But I would like to respond to Judge McGee's last comment from the prior argument about the Palifax case. What is a particularly serious crime is actually an application of facts to law because the immigration judge looks at the facts of the criminal conviction. It's not a straight-up legal determination, the aggravating circumstances, things like that, and then determines whether or not that crime itself is particularly serious. In that case, serious enough to strip the element of withholding. But one step removed from that, and that's what I'm trying to sort out. Right. Because in this case, what the ultimate statutory determination is, is whether or not she's established a basis for withholding of removal. That means whether petitioner's life will be threatened on a basis of protected ground in the future, I think. But before we get to that, according to our case law, and I know it's our case law, though, that says, well, disfavored group analysis needs to be considered. And that means we have to determine if she's a member of a disfavored group and an individualized risk. Well, that's the precursor to the ultimate statutory standard. It seems to me that that means that it's not applying the law. That's applying a factual determination to determine whether she's at individualized risk. Once you make that determination, then you can answer the question like they did in Palafox. So explain to me or tell me why that isn't the case. Well, Your Honor, if this were a slightly different case, for example, if she were from another country and she'd introduced evidence that she was a member of a disfavored group, then that analysis would, in fact, be a factual analysis and it would be very important that the immigration judge look into that. The difference is here we have a case establishing the law and the facts that show that Chinese Christians are a disfavored group in Indonesia. So the board could then take that and apply the immigration judge's finding, which included a finding of an unlikelihood of future persecution. But that's not enough. There's not enough facts from what I can see of the individualized risk. But tell me if I'm missing something. Where's the individualized risk facts that the BIA had to make a determination on, which according to their regs I don't think they're supposed to. They're supposed to send it back to the IJ, which you acknowledge the IJ didn't make that determination. Again, it would be if it were a different case from a different country where it wasn't already established as a matter of law that they were a disfavored group. That would, in fact, be very important. When you say disfavored group, are you talking about the entire disfavored group analysis? Because that disfavored group analysis means, yes, she's a member of a disfavored group. I think it's undisputed that she's a Chinese Christian living in Indonesia. Is that correct? That's correct. From Indonesia. So she's, I think, probably beat the first element. The second element means that there has to be an individualized risk. Right, Your Honor. And that. Where was the evidence of that or the determination of that by the IJ? Well, Your Honor. Where? The individualized risk is an element, regardless of whether an alien is part of a disfavored group, is an element of well-founded fear of persecution. As I was saying before, the objective and subjective component. Any alien has to show they have an individualized risk to satisfy the objective component. That is the legal standard for withholding a removal, and that's the legal standard that the court applies. Well, I want to follow up, if I might. I think what we're trying to get at is where in the record did the IJ talk about the individualized risk? If you don't, everybody agrees she's a member of a disfavored group. The question is where in there did the IJ say, even though maybe it preceded the decision of Wackery, she says in there, here's the things that I look at that there are individualized risks. And she sort of, it's a clairvoyance. She foresees Wackery coming down. That's a hypothetical, of course. But she sees that. Where in the record does it support your position? Well, Your Honor. I'm a trial judge, I would ask. No, I understand that. The immigration judge didn't use those exact words, but the immigration judge found that she failed to. That's what I'm getting at. If she didn't use the magic words because the magic words hadn't been invented yet, the question is what language did she say that would be the functional equivalent of that? Where in the record? What the immigration judge needs to say is that she did not satisfy the requirements for withholding a removal because those are subsumed within those requirements. And the subjective aspect is automatically satisfied when the petitioner testifies credibly that they fear persecution. So that's not the issue. The issue is the objective. But you also have to add to that, wouldn't you, to really answer his question, that she also did find facts in the record regardless thereof, and that the BIA in looking at those facts may have been able to conduct the analysis. Wouldn't you have to say that? Yes, Your Honor. I mean, the Board would need to be reliant on that. But I guess in this situation, the biggest problem you have is that I agree with counsel. I think the BIA found facts that the IJ didn't ever find. Well, there's a few problems with some of those facts. Some of them weren't raised in the opening brief. Others aren't relevant. For example, in this particular case, there's a big complaint that the Board found that her business had only been partially destroyed. Well, if you look at the immigration judge's decision, the immigration judge wasn't even sure if it had been partially or totally destroyed because her testimony and her evidence conflicted on that. The immigration judge declined to make an adverse credibility finding. But nevertheless, you know, if the evidence and testimony is inconsistent, taking it as true doesn't allow the petitioner to pick and choose which truth they want. For example, she testified that it was completely destroyed. Later, she testified that she never returned, so she didn't see it. The police report she introduced said that it had been ransacked and they had left behind a threatening note. She, in fact, cites that threatening note as evidence of her past persecution. So it's difficult to see how a completely destroyed store would be a place for a threatening note. She said it was ransacked. What about this fact? I mean, she had testimony that she had continued threats to her safety after she left Indonesia. BIA ignored that testimony. Well, she had received a visit. Yeah, she had received one threat from the neighborhood bureau. They ignored that testimony altogether. They didn't even talk about it. They say the record presents evidence that the respondent has faced problems in the past. That's the best they said. What am I to do with that? Well, in that case, the board is essentially referring to what the immigration judge found of the incidents from the past, in that case. In this case, also, I'd like to point out something very quickly. It makes it different from the prior case as far as what this court needs to decide. The court does need to decide the extraordinary circumstances case, whether or not she's eligible for asylum or withholding. But one of the reasons that the board, from the immigration judge, was finding that she did not show that she could not safely relocate. That would preclude her obtaining withholding. Now, if the board erred in finding that she had not suffered past persecution, then she wouldn't have that burden and the case would actually need to be remanded for reconsideration in that case. So the two issues the court really has to grapple with in this case, unlike the prior one, is the extraordinary circumstances question and whether or not she carried a burden to show that she could relocate. She didn't actually challenge that finding in her opening brief or reply brief. What she argued was that the board improperly shifted it to her because she had been persecuted in the past. Let me ask you before your time is up regarding Hwang v. Attorney General, because that's the case you mentioned at the end of the last case. And I'm trying to figure out how that helps you. I think that's the Third Circuit case that you added to your supplemental briefing to this court. And it said in there something about forecasting of future events. And if forecasting of future events is fact-finding under Hwang, then didn't the BIA err here in forecasting future persecution under the disfavored group analysis? Well, the immigration judge forecasted that she would not be persecuted.
judges: McNamee, Smith, Murguia